**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CARLOS ALBERTO LAINEZ GARCIA,<br><br>Petitioner,<br><br>v.<br><br>LEONARD ODDO, *et al.*,<br><br>Respondents. | ) | 3:26-cv-01256 |

**MEMORANDUM ORDER GRANTING IN PART PETITIONER'S MOTION FOR FURTHER RELIEF AND ORDERING RELEASE FROM DETENTION**

Pending before the Court is Petitioner's Motion for Further Relief, or, in the Alternative, to Alter or Amend Judgment or to Enforce. ECF No. 12. Petitioner, a citizen of Honduras, is currently being detained in Louisiana. ECF Nos. 1; 12. Petitioner's history with the United States Immigration system began in 2005 when he voluntarily self-deported. He was subsequently deported in 2007 after he had returned to the United States. ECF No. 13. Petitioner then applied for asylum under I-589 in 2020 due to a fear of persecution in Honduras and was permitted to enter the United States in or around 2021 via the CBP One app. *Id.* His asylum claim is based on an assertion that an individual threatened and attempted to kill him in Honduras. ECF No. 12. On March 17, 2025, he was granted work authorization, which remains valid until 2030. ECF No. 13, at 5. He was arrested on or around June 18, 2026, while riding as a passenger in a truck in Cranberry Township, Pennsylvania, which is located in this judicial district. *Id.* He was held in immigration detention in this District thereafter and was so detained as of the filing of his Petition. He was subsequently moved by Respondents to detention in Louisiana.

Petitioner filed his original petition for Writ of Habeas Corpus on June 30, 2026. *Id.* The Court's Case Management Order was entered on July 7, 2026, and the Government's Response to the Petitioner's Motion was filed on July 9, 2026. ECF Nos. 5; 8. On July 15, 2026, this Court issued a Memorandum Order determining that Petitioner was to have property returned to him and was to "receive an individualized bond hearing before a neutral immigration judge pursuant to 8 U.S.C. § 1226." ECF No. 9.

This bond hearing took place on July 20, 2026. ECF No. 13. Instead of a hearing transcript, this Court was provided with two separate audio recordings of the bond hearing. *See generally* ECF No. 12. There are two separate audio recordings because after the first recording began it was discovered that Petitioner's electronically submitted exhibits were not appearing for review by all parties due to a docket system glitch. *Id.* After a brief recess, the bond hearing proceeded and is recorded in the second audio file. *Id.* Though the Immigration Judge did not appear to make any specific findings based on the Petitioner's exhibits, this Court presumes that the Immigration Judge had a full opportunity to examine and consider Petitioner's exhibits.

Petitioner was denied bond at this bond hearing because the Immigration Judge determined that he was a flight risk. ECF No. 12. The Immigration Judge expressly asserted that there was no evidence that Petitioner was a danger to the community. *Id.* The parties advance no such assertions in this Court. In denying bond, the Immigration Judge first scrutinized the Petitioner's most recent date of entry into the United States and asserted that while the Notice to Appear stated that his entry was in 2019, the Form I-94 shows that his entry was in 2020-2022. *Id.* The Immigration Judge did not describe the significance of these dates relative to the bond decision. Then the Immigration Judge stated findings relative to the Petitioner's community ties and found that (1) he has been living in the United States with his fiancée who is a United States citizen; (2) one of his

children is seeking asylum in the United States; (3) two of his children live in Honduras; (4) letters from family and friends in his community were submitted on his behalf; (5) he has been continuously employed while in the United States; (6) he has no criminal history; and (7) he has a sister who has some sort of papers related to her being present in the United States. *Id.*[1] The Immigration Judge pointed out that while Petitioner's Counsel asserted that his sister is a United States citizen, when asked at the bond hearing, the Petitioner said that his sister has papers sufficient to travel abroad, not that she holds lawful immigration/citizenship status. *Id.*[2] The Immigration Judge denied bond. ECF No. 12.

In response to the denial of bond, the Petitioner now argues that first, the bond hearing did not comport with Due Process due to its reliance on "ancient evidence" and second, that by entering the United States via the CBP One app in 2021, the Immigration and Customs Enforcement Agency had determined him to not constitute a danger or flight risk. ECF No. 12. Therefore, he argues, the Government needs to demonstrate a "changed circumstances" at a bond hearing to justify his detention. *Id.*

## I. This Court has Jurisdiction Over the Matter

District courts have limited statutory authority to review the decisions of immigration judges. 8 U.S.C. § 1226(e) specifies that "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond

[1] Counsel for Petitioner additionally asserted that Petitioner has continuously lived within the same 2-mile radius since receiving parole and provided documentation that Petitioner has received valid work authorization. This was not discussed in the Immigration Judge's recitations on the record at the hearing but is listed here to provide a full accounting of Petitioner's possible community ties. ECF No. 12-2, p. 15-16.

[2] Petitioner asserts that his sister is a United States citizen and listed her as such on his bond worksheet. *See* ECF No. 18 (citing to ECF No. 12-2, at p.12). The Respondents appear to concede that his sister is a United States citizen as the Respondents do not appear to attempt to refute this point.

or parole." 8 U.S.C. § 1226(e). However, this statutory restriction does not nullify the principle that a district court may grant a writ of habeas corpus if a petitioner is detained "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). This right to habeas relief is available "to every individual detained within the United States", including a noncitizen's challenges to immigration detention. *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. CONST. art. I, § 9, cl. 2); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Demore v. Kim*, 538 U.S. 510, 523 (2003). Therefore, this Circuit has held that a district court can scrutinize a bond hearing to determine whether minimum standards of Due Process were met in the bond hearing process and result. *Buele Morocho v. Warden Philadelphia FDC* et al, No. 26-1150, 2026 WL 2546223 (3d Cir. August 28, 2026).

## II. The Record Demonstrates That the Denial of Bond Here Does Not Comport with Due Process and is Therefore Constitutionally Deficient

There are three criteria that must be met for a bond hearing to comport with Due Process: (1) a decision maker must conduct fact finding based on the produced record; (2) the alien must be allowed to make arguments on their behalf, and (3) the alien must receive an individualized determination of their interests. *Amos v. Att'y Gen. United States of Am.,* 157 F.4th 313 (3d Cir. 2025) (applying framework from *Abdulai v. Ashcroft*, 239 F.3d 542 (3d Cir. 2001)). Here, both parties agree that factors one and two were met, therefore we consider whether the bond hearing included an "individualized determination" of danger or flight risk. *Id.* The burden is on the government to prove by clear and convincing evidence that such an individualized determination occurred*.* *German Santos v. Warden Case Pike Cnty. Corr. Facility*, 965 F.3d 203, 213 (3d Cir. 2020).

For a bond hearing to include an individualized determination, an immigration judge must rely on facts which are specific and particularized to the petitioner and their circumstances. *See generally Demore v. Kim*, 538 U.S. 510 (2003). "Due process is not satisfied, however, by rubberstamp denials based on temporally distant offenses. The process due even to excludable aliens requires an opportunity for an evaluation of the individual's current threat to the community and his risk of flight." *Chi Thon Ngo v. I.N.S.*, 192 F.3d 390 (3d Cir. 1999), *amended* (Dec. 30, 1999). This means that petitioners bond claims must be assessed based on current facts because "[t]he fact that some aliens posed a risk of flight in the past does not mean they will forever fall into that category." *Id*. at 398.

In *Chi Thon Ngo*, the Petitioner was initially denied parole based on criminal charges that were nearly 10-years old. *Id.* This Circuit held that while the convictions were potentially relevant, the denial of parole was deficient because there was no determination of whether his conduct would be repeated or otherwise had any present bearing on his likelihood of being a danger to the community or risk of flight. *Id. See generally Quinteros v. Warden Pike Cnty. Corr. Facility,* 784 F. App'x 75 (3d Cir. 2019) (applying parole standard to an immigration bond issue).

As applied to Petitioner, all parties seem to agree that at minimum the Immigration Judge's decision "gave considerable weight to" Petitioner's 2005 voluntary departure and 2007 deportation. ECF Nos. 17, at 2; 18, at 4. A review of the provided audio recording of the bond hearing demonstrates that the Immigration Judge, in concluding the hearing and stating her decision, essentially provided a stream of consciousness, serial recitation of some of the evidence presented, but without the ultimate "risk of flight/bond" conclusion being tied to any particular piece or pieces of evidence. At the most, perhaps the Immigration Judge *may have* denied bond due to the 2005 and 2007 immigration proceedings, or perhaps because the individual who made

the death threats that are the basis of Petitioner's I-589 proceedings is in custody in Honduras. ECF No. 12.

But guesswork or speculation are not part and parcel of a court's consideration of the claims the Petitioner has now presented here. The Immigration Judge did not develop on the record or in her statement of facts as she denied bond any reasoning as to how an individual in custody in Honduras who threatened to kill the Petitioner makes Petitioner a flight risk from bond in the United States, and none appears obvious to the Court. Other statements of the Immigration Judge that in theory could be construed to be factors she relied upon in determining that Petitioner is or is not a flight risk are that the Petitioner has two children in Honduras, and that his sister may or may not be a United States citizen. Such facts were mentioned in passing when the Immigration Judge was reciting Petitioner's community ties but were not stated as part of the Immigration Judge's reasoning for why bond would be denied or how they generated a risk of flight. And while this Court does not review the merits of the Immigration Judge's bond decision, having listened to the recording of the Immigration Judge's ultimate bond ruling, it can state with confidence that the laundry list of facts the Immigration Judge stated immediately before denying bond do not generate some clear inference of risk of flight, such that any link between them and the bond decision was implicitly obvious.

Given that it was a violation of Due Process in C*hi Thon Ngo* for an immigration judge to primarily rely on decade old charges, the Immigration Judge's reliance (if there was such reliance) on deportation events that occurred roughly 19 years or more ago fall short of the mark for denial of bond based on that history. Ultimately, the bond hearing audio demonstrates that the Immigration Judge perhaps appears to have denied bond based on "ancient evidence" of the Petitioner's prior departure from the United States that was then somehow transformed without

explanation into a finding of flight risk. None of the other facts listed by the Immigration Judge would facially appear to have cut in favor of the decision reached, even if the Immigration Judge did not expressly tie her bond denial conclusion into any specific facts found.

The Immigration Judge's broad brush recitation of some of the evidence in the record without any connection being made, even briefly, as to the risk of flight if bond were granted generates the conclusion that the decision to deny bond based on the Petitioner being a flight risk is not attached to the evidence presented at the hearing. Because of that, the bond hearing here was conducted in violation of Petitioner's Due Process rights under the Fourteenth Amendment to the Constitution of the United States.

## III. To Comport with Due Process, the Government Must Demonstrate that a Change of Circumstances has Occurred that Justifies the Detention

When the government grants and then seeks to revoke parole, the Due Process Clause of the Fourteenth Amendment is implicated, and the government must prove that a change of circumstances has occurred which justifies the detention. *See generally Morrissey v. Brewer*, 408 U.S. 471 (1972). *See e.g.*, *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025); *Tarapchak v. Lackawanna Cnty*., No. CV 15-2078, 2016 WL 6821783, at *7 (M.D. Pa. Nov. 17, 2016); *McGee v. Thomas*, No. CV 16-5501, 2019 WL 2515982, at *5 (E.D. Pa. June 17, 2019). This is because granting parole "creates 'an implicit promise,' upon which that individual may rely, that they will remain free so long as they obey the terms of their probation. *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). *See Buele Morocho v. Warden Philadelphia FDC* et al, No. 26-1150, 2026 WL 2546223 (3d Cir. August 28, 2026) (applying standard to bond).

In this case, both parties agree that Petitioner was paroled into the United States by the U.S. Immigration and Customs Enforcement Agency in 2021. ECF No. 17-2. However, the parties are at odds as to whether this parole status expired and whether it matters whether his parole status had expired. ECF Nos. 17, at 7; 18 at 6. As set out below, it does not.

First, should Petitioner have had an active parole status at the time of his detention, *Morrissey* makes clear that the Respondents have the burden of proving that a change of circumstances has occurred which justifies the detention. *Morrissey v. Brewer*, 408 U.S. 471 (1972).

Second, should Petitioner's parole status have expired, the same result is reached under the *Mathews* Balancing Test. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). To determine if a Due Process violation has occurred, a court must weigh (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. *See also Buele Morocho v. Warden Philadelphia FDC* et al, No. 26-1150 at 40* (3d Cir. August 28, 2026) (applying *Mathews* test to immigration bond hearing).

All parties agree that Petitioner's private interest in not being detained is "a strong interest." ECF Nos. 17, at 10 (Respondent); 18, at 7 (Petitioner). It is settled law that petitioners have a "constitutionally protected interest in avoiding physical restraint." *Buele Morocho*, No. 26-1150 at 40* (quoting *Kansas v. Hendricks*, 521 U.S. 346, 356 (1997)). *See also Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects.").

The additional procedural safeguard at issue in the second factor is whether the government must prove a change in circumstances from 2021—the time when all parties agree Petitioner was paroled. The Government contends that there is no risk of Petitioner being erroneously deprived of his liberty interest because the bond hearing here was constitutionally sufficient. But that bond hearing was constitutionally insufficient as described above.

The third *Mathews* factor does generally weigh in the Government's favor as the Government does have a strong interest in the enforcement of its immigration laws. It is also well recognized that the Government has a "legitimate interest in preventing the release of dangerous noncitizens and those who might fail to appear at future hearings." *Buele Morocho*, No. 26-1150 at 42*. However, the administrative burden of requiring the Government to address whether a change of circumstances has occurred is minimal given the Government's existing duty to demonstrate dangerousness or flight risk. *See generally Id*. at 42 (asserting that "the Government has not argued that bond hearings are unduly burdensome").

Accordingly, on balance, the *Mathews* factors weigh in favor of Petitioner's position and reveal that a Due Process violation occurred when the Government did not prove a change of circumstances sufficient to support Petitioner's continued detention.

The Court well understands and respects that its jurisdiction is statutorily limited by 8 U.S.C. § 1226(e), which is why this Court does not make any determination on the ultimate issue of whether the Petitioner poses a flight risk or a danger and does not engage in some sort of *de novo* reconsideration of the bond decision. And in any event, the Immigration Judge, based on the position of the parties, asserted that Petitioner was not a danger to the community, and no one advances that position here. Nor is it the Court's function to determine whether it agrees or not with the ultimate decision by the Immigration Judge. What does matter is whether the record of

that hearing demonstrates that the Immigration Judge connected the evidence presented to the decision reached such that there was in actuality an "individualized assessment" of whether there was a basis to deny bond. For the reasons stated, the record does not support a conclusion that such occurred here. When an immigration bond hearing falls below the standards that the Constitution of the United States mandates adherence to, this Court is obligated to act.

Therefore, this 16th day of September 2026, the Court GRANTS Petitioner's Motion for Reconsideration or in the Alternative Motion to Enforce to the extent of this Order. It is HEREBY ORDERED that Petitioner is to be released from custody forthwith. *See generally Buele Morocho*, No. 26-1150 at *42 (affirming both District Court's decisions to release Petitioners). Respondents are ORDERED to return to Petitioner any and all funds or property which may have been seized from him at the time of his arrest or which are otherwise in their custody. Respondents are directed to file a Notice to this Court on this docket within twenty-four (24) hours of Petitioner's release detailing the date, time, and circumstances of Petitioner's release. Respondents are enjoined from re-detaining the Petitioner within the interior of the United States under § 1225(b)(2) permanently, as this Circuit has now held that § 1225(b)(2) does not apply to noncriminal noncitizens already present in the United States. *Buele Morocho v. Warden Philadelphia FDC*, No. 26-1150, 2026 WL 2546223 (3d Cir. Aug. 28, 2026). Respondents are enjoined from re-detaining the Petitioner under § 1226(a) for a period of at least twenty-one (21) days and may then only re-detain Petitioner if there then exists a fact-supported lawful basis for doing so, and such is in accord with the law. The Clerk shall close the case on the docket without prejudice. The Court retains jurisdiction over the action and the parties pending further proceedings, as may be appropriate, including interpretation or enforcement of its Orders.

DATED this 16th day of September, 2026.

/s/ Mark R. Hornak
United States District Judge